UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

|  |  |
|---|---|
| RYAN HURLEY, | ) |
|           Plaintiff, | ) |
| vs. | ) No. 4:11-cv-00107-SEB-WGH |
| MARK D. MATTHEWS, | ) |
|           Defendant. | ) |

**ORDER GRANTING SUMMARY JUDGMENT**

This cause is before this Court on a motion for summary judgment filed by Defendant Indiana Gaming Commission Investigator Mark Matthews ("Matthews"). Matthews contends that he is entitled to judgment as a matter of law because under the circumstances he confronted four years ago he possessed at least arguable probable cause to arrest Plaintiff Ryan Hurley ("Hurley"), entitling him to qualified immunity from Hurley's claim against him in this litigation. For the reasons detailed herein, we agree. Investigator Matthew's motion is therefore <u>GRANTED</u>.

**Factual Background**

The events underlying Hurley's lawsuit began on January 20, 2009, when an individual claiming to be "JP Carey" called the Grand Victoria Casino gift shop at approximately 8:45 p.m. requesting $2,500.00 in casino gift certificates. The caller also requested that the gift certificates be processed that same night so he faxed a form containing the said Mr. Carey's address, phone number, and credit card number for payment. The caller also indicated on the faxed form that

another individual, "Ryan Hurley," would be the person picking up the certificates at the casino hotel.

At approximately 10:30 p.m., two men – one in an orange jacket, the other in a blue jacket – approached the turnstiles at the entrance to the Grand Victoria Casino boat. According to a case report prepared by Indiana Gaming Commission Agent Kelli Spurlock, the man in the blue jacket, who later was identified as Shane Ponchot, appeared according to a surveillance video to be holding papers resembling Grand Victoria Casino gift certificates.[1] However, Ponchot was not allowed to board the boat because his identification bearing the name "Ryan Hurley," had expired. The man wearing the orange jacket presented apparently valid identification bearing the name "Andrew Brunckhart," and the back of his hand was stamped signaling his entitlement to enter the casino. Rather than boarding the boat immediately, however, both men walked away from the turnstiles together and proceeded back toward the pavilion area.

At approximately 10:45 p.m., Ponchot returned to the casino hotel, while Brunckhart boarded the casino boat and approached the cash cage. Brunckhart presented the gift certificates in an effort to cash them, but was prevented from doing so because he presented the expired identification bearing the name "Ryan Hurley." When the transaction was thwarted, Brunckhart hastily grabbed up the gift certificates and exited the casino and rendezvoused again with Ponchot in the pavilion. Shortly thereafter, Brunckhart returned to the cash cage (now wearing a red sweatshirt and a Louisville hat) and was allowed to cash the gift certificates, presumably by presenting proper identification, that is, the same identification he had used initially to gain

---

[1] We assume that evidence omitted from the record would establish that the gift certificates had been picked up from the casino hotel in accordance with the directions given by the individual working at the gift shop. We indulge that assumption to make sense of the facts actually provided in the briefing.

admittance to the casino. After cashing the gift certificates, Brunckhart departed the casino property with Ponchot.

Matthews is a criminal investigator with the Indiana Gaming Commission. His duties include conducting investigations relating to the Grand Victoria Casino. Matthews began his criminal investigation[2] into the circumstances of this incident on February 3, 2009, after a tip was received from a friend of the actual John Peter Carey who telephoned the Rising Sun Casino to report that Mr. Carey's credit card had been charged for items that he had not authorized.[3]

Matthews conducted an investigation of the incident beginning with a review of the case file created by Agent Kelly Spurlock (Def.'s Ex. 3), the gift certificate order form (Def.'s Ex. 5), and statements from casino employees who had had contact with Ponchot and Brunckhart.

On February 6, 2009, Matthews submitted a probable cause affidavit to the county prosecutor that recited (in pertinent part) as follows:

> Your affiant was contacted by the victim, John Peter Carey, stating on January 20, 2009, someone made a purchase at the Grand Victoria Casino & Resort Gift shop in the amount of $2,500, which he had no knowledge of and did not give anyone permission to make this charge on his Bank of America Mastercard.
>
> The investigation revealed that on January 20, 2009, the gift shop employee received a phone call from a man claiming to be JP Carey. Mr. Carey requested to purchase five $500 gift certificates over the phone using the purchase form located on the Grand Victoria Casino website. After the man supplied the proper form including the name, address, phone numbers and credit card information, signature and the name (Ryan Hurley) and signature of the person who would be picking the certificates up, the certificates were issued and taken to the hotel front desk. Investigation revealed the clerk called the return number and spoke with a man who identified himself as JP Carey. The number given was later determine (sic) to return to an unknown fax machine.
>
> Ryan Hurley and Andrew Brunkhart, both later identified by ID's given to the Grand Victoria Casino security staff, came to the casino and claimed the

---

[2] Matthews testified that the incident had been brought to his attention prior to its having been considered a criminal matter because Brunckhart's initial attempt to cash the gift certificates with expired identification was considered suspicious.

[3] The parties do not explain why Mr. Carey did not contact the casino directly.

> certificates. Investigation further revealed Ryan Hurley was denied access to the casino due to his ID card being expired. Andrew Brunkhart was permitted on the casino after producing a valid ID.
>
> Andrew Brunckhart then proceeded to the Main Bank located on the casino floor where he presented the certificates and received $2,500.00 cash in return after signing his name to the back of the certificates. Andrew Brunkhart immediately met back with Ryan Hurley and they left the casino property.

Def.'s Ex. 7. Based on this sworn statement, Magistrate Judge Kimberly Schmaltz determined that the affidavit contained probable cause sufficient for the issuance of an arrest warrant of Ryan Hurley for the alleged crimes of credit card fraud and theft. In conjunction with the probable cause affidavit, Matthews executed two additional sworn documents averring that Ryan Hurley had committed the offenses of theft and credit card fraud.

Matthews's pursuit of charges against Ryan Hurley was based on what turned out to be his mistaken belief that the man in the blue jacket (Shane Ponchot) was in fact Hurley. Matthews's belief was predicated on the fact that Hurley had been identified as the "receiver" of the gift certificates on the faxed form sent to the gift shop and that Ponchot had been using Hurley's expired identification. Matthews admits that he conducted no further investigation in an effort to confirm that the man wearing the blue jacket was actually Hurley, by, for example, comparing the identification card photo to the surveillance video of Ponchot.

On September 2, 2009, Hurley was arrested at his place of employment in Ohio and was detained in jail for seven days and six nights in jail before being extradited to Indiana and released on bond.

Four months later, in January 2010, Brunckhart was deposed at which he testified that the man wearing the blue jacket was not Ryan Hurley. Upon learning of this factual error in his affidavit, Matthews testified that he discussed with the deputy prosecutor the dismissal of the

charges against Hurley and the need to refocus the investigation on Ponchot's involvement. Matthews has testified that he was unfamiliar with the procedures for securing the dismissal of the charges against Ryan Hurley, but that he eventually received notice of their dismissal as of March 1, 2010.

Hurley has brought this suit against Matthews in his individual capacity asserting constitutional violations for unlawful arrest and detention, pursuant to 42 U.S.C. § 1983, and for the tort of malicious prosecution.

## Legal Analysis

### I. Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). A failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

**II.   Section 1983 Claims**

Mr. Hurley's false arrest claim is based on 42 U.S.C. § 1983 which statute provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

>jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

Thus, to recover on his claim, Mr. Hurley must be able to establish that he was deprived of a right secured by the Constitution or laws of the United States by a person acting under color of state law.

Matthews maintains that he is entitled to qualified immunity which shields him from liability on Mr. Hurley's claim. "Determining whether qualified immunity applies to the actions of a public official involves a two-part inquiry: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, amount to a constitutional violation; and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation." McComas v. Brickley, 673 F.3d 722, 725 (7th Cir. 2012) (citing Jones v. Clark, 630 F.3d 677, 680 (7th Cir. 2011). The Supreme Court has held that a district court may address these questions in any order. Pearson v. Callahan, 555 U.S. 223, 236-42 (2009). As explained below, we need only answer the second question to determine that Matthews is indeed entitled to qualified immunity.

"To determine if a right was clearly established at the time of an alleged violation, we look at 'whether it would be clear to a reasonable official that his or her conduct was unlawful in the situation.'" McComas, 673 F.3d at 725 (quoting Carvajal v. Dominguez, 542 F.3d 561, 566 (7th Cir. 2008)). This inquiry turns on whether the officer had "arguable probable cause," which "exists when a reasonable officer could *mistakenly* have believed that he had probable cause to make the arrest." Id. (citing Jones 630 F.3d at 684).

Thus, our task is to determine whether Matthews's belief that he had probable cause to arrest Mr. Hurley was reasonable, even if it turns out that his belief was mistaken. Probable cause exists if the facts and circumstances within the knowledge of the officer and of which he

had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the complainant had committed the crime.[4]  Beauchamp v. City of Noblesville, 320 F.3d 733, 743 (7th Cir. 2003).  The Court looks only to those facts and circumstances of which the officer was aware at the time the warrant was sought.  Id.

In conducing that review, we find that the facts and circumstances of which Matthews was aware at the time he sought the arrest warrant for Mr. Hurley were sufficient to warrant his belief that Mr. Hurley had committed a crime.  In this regard, we note that the fax form requesting the gift certificates submitted to the casino indicated that Mr. Hurley would be picking up the gift certificates implicated in this theft.  More importantly, the man who showed up with Brunckhart to cash the gift certificates presented identification to the casino bearing Mr. Hurley's name.  Mr. Hurley has cited no evidence that should have caused Matthews to question his conclusion that the man, later identified as Shane Ponchot, was in fact who he claimed to be, namely Ryan Hurley.[5]

Mr. Hurley argues that a reasonable jury could find that Matthews knowingly or with reckless disregard for the truth made a false statement to the Magistrate Judge, without which probable cause for his arrest would not have existed.  The false statement Mr. Hurley identifies is that Hurley came to the casino to claim the gift certificates.  Mr. Hurley claims that there is no

---

[4] Mr. Hurley was arrested for theft in violation of Ind. Code § 35-43-4-2(a), which states in part: "A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft . . . ."  Mr. Hurley was also arrested for credit card fraud in violation of Ind. Code § 35-43-5-4(c), which states: "A person who with intent to defraud, obtains property by using, without consent, a credit card that was issued to another person."  The existence of probable cause for either crime is enough to bar liability under § 1983.  McComas, 673 F.3d at 726.

[5] Mr. Hurley also argues that it was unreasonable for Mathews to believe that he had exerted unauthorized control over the property of another or used Mr. Carey's credit card.  However, this argument, like his others, is based upon the assumption that Mathews's belief that Ponchot was Hurley was unreasonable.  We disagree with that premise.  Mathews had reviewed surveillance video of the man who he reasonably believed to be Mr. Hurley accompanying Mr. Brunckhart to the casino and even holding in his hands the gift certificates that were falsely redeemed.  Thus, we find no merit in the argument that Mathews lacked probable cause to believe that Hurley participated in the theft and credit card fraud.

evidence that he ever came to the casino. However, that claim is simply not true. By Matthews's assessment, the man accompanying Andrew Brunckhart to claim the gift certificates and who was seen in surveillance video holding what appeared to be the gift certificates was Ryan Hurley. The Seventh Circuit has made clear that "once police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence." Schertz v. Waupaca County, 875 F.2d 578, 583 (7th Cir. 1989). Thus, the fact that later investigation disclosed that the man identified as Hurley was not Hurley does not change the fact that Matthews reasonably believed the individual to be Hurley at the time of Hurley's arrest.

Mr. Hurley also argues that if Matthews had provided the Magistrate Judge with the exculpatory information that the individual in the surveillance video differed in appearance from the photo of Ryan Hurley on the expired identification, the Magistrate would not have approved the filing of criminal charges or issued a warrant for Hurley's arrest. While that may be true, there is no evidence that Matthews possessed such exculpatory information at the time he submitted his probable cause affidavit or, as discussed above, that he had any duty to seek out such information. Indeed, he testified that he never made such a comparison of the photos and that, if he had, he would not have pursued the charges against Mr. Hurley. Matthews Dep. at 95. Thus, any exculpatory information that Matthews may eventually have obtained has no bearing on our determination that he had probable cause to pursue charges against Mr. Hurley at the time he obtained the warrant for his arrest.

### III.   Malicious Prosecution Claim

Mathews also seeks a dismissal of Mr. Hurley's malicious prosecution claim on the grounds that it is not recognized under federal law. Mr. Hurley has not responded to this

argument and, thus, has waived any objection he may have to Mathews's motion to dismiss. See Williams v. REP Corp., 302 F.3d 660, 666 (7th Cir. 2002)(quoting Hojnacki v. Klein-Acosta, 285 F.3d 544, 549 (7th Cir. 2002)).  This claim, accordingly shall be dismissed.

## Conclusion

For the reasons detailed above, Mathews is entitled to qualified immunity on the constitutional claim against him under § 1983.  His motion for summary judgment is therefore GRANTED.  Likewise, Hurley's malicious prosecution claim is dismissed.  Judgment shall enter accordingly.

IT IS SO ORDERED.

Date: __01/10/2013

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Cory Christian Voight
COOTS HENKE & WHEELER, P.C.
cvoight@chwlaw.com

Kenneth Lawson Joel
INDIANA ATTORNEY GENERAL
kenneth.joel@atg.in.gov

Mark J. Byrne
JACOBS KLEINMAN SEIBEL & MCNALLY
mbyrne@jksmlaw.com

Grant E. Helms
OFFICE OF THE ATTORNEY GENERAL
Grant.Helms@atg.in.gov